# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CYNTHIA DILLON, | ) | |
| | ) | No. 70923-2-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR & | ) | |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON AND BARDAHL | ) | |
| MANUFACTURING, A WASHINGTON | ) | |
| CORPORATION | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents. | ) | FILED: December 8, 2014 |

SPEARMAN, C.J. — Cynthia Dillon was injured on her way home from work as she walked through her employer's parking area. She challenges the trial court's determination that her injuries are not covered under Title 51 RCW, the Industrial Insurance Act (Act), which precludes coverage for injuries sustained in a parking area. We conclude that Dillon's injuries are not covered under the Act and affirm.

## FACTS

In the fall of 2010, Cynthia Dillon worked for Bardahl Manufacturing, Inc. as a lab technician assistant. On November 24, 2010, after Dillon had completed her work for the day, she prepared to leave the building through an "employees only" door, which was one of two exits in the building. Dillon left the building and, after walking about fifteen steps, slipped and fell on a patch of black ice.

Dillon fell near a drain in a paved area just outside the Bardahl facility. The area was bounded on one side by a public roadway. On the other side of the

paved area, opposite the roadway, was the employee's only door, which was bounded by an exterior wall on one side and a roll top bay door on the other. The bay door was rarely used, as secured shelves ran along the inside of it. When the bay door was opened, it was solely for ventilation purposes. Employees had set out an ash tray in the paved area between the roadway and doors; this area had become known as the employee smoking area. Bardahl generally did not use this area to conduct business, though it was occasionally used for storage and employees frequently dumped buckets of water used in the business in a drain located in the area.

The paved area directly in front of the doors contained no signage, painted lines, or other markings denoting parking spaces and no employees were assigned to park in this area. Nevertheless, employees customarily parked in this area. At any given time during Bardahl's hours of operation, several vehicles could be found parked in a line running parallel to the adjacent exterior wall and continuing around a corner of the building. Dillon testified that she believed one car was parked in this area when she fell. In addition, on the far side of the bay door were four angle parking spaces, which were clearly identified by "Reserved Parking" signage. Clerk's Papers (CP) at 24. Cars parked in the reserved spaces would have been so close to the smoking area that their rear bumpers abutted or crossed the common boundary with the smoking area.

After Dillon's fall, she experienced significant pain and sought medical treatment. Shortly thereafter, she filed an application for worker's compensation with the Department of Labor & Industries (Department), claiming she was entitled to benefits under the Act. The Department determined that Dillon's

2

injuries were not covered under the Act because they had occurred in a parking area and had not occurred in the course of employment. The Department denied Dillon's motion for reconsideration.

Dillon appealed the Department's decision to the Board. A hearing was held before an industrial appeals judge (IAJ) at which Eric Nicolaysen, the owner of Bardahl, gave undisputed testimony that the area where Dillon fell had been used for parking for fifty years or more. Nicolaysen, Dennis Fisk, a Bardahl employee, also gave undisputed testimony that while the area where Dillon fell was occasionally used for storage and the drain was frequently used by employees to dump water used in the business, the area was not generally used to conduct business.

Robert Thorpe, a land use consultant, testified on Dillon's behalf that the use of the area where she fell as a parking area was not appropriate under city, state, and federal code. He opined that there should be a lane or "walking area" in the parking area for access under the American with Disabilities Act (ADA), for "fire access," and for "unloading chemical materials. Certified Appeal Board Record (CABR)[1] (Thorpe) at 62, 69. He testified that the law required a fire lane through the smoking area, which "could be combined with ADA and emergency access" and could be a "multiple-use lane, walkway or lane." CABR (Thorpe) at 67. He noted that the cars in the angled reserved parking spaces were "in designated areas." Id. at 70. By contrast, it was his opinion that the cars parked along the exterior wall and in front of the employee entrance were "parked where

---

[1] CABR (Dillon; Fisk; Nicolaysen; Thorpe).

3

they shouldn't be parked." Id. at 70-71. In Thorpe's estimation, the area should have been "an open lane for ADA" and "for . . . turning movements and parking requirements." Id. at 70-71.

The IAJ found Thorpe's testimony unpersuasive because Dillon cited "no authority for the proposition that an area used as a parking area falls outside of the parking lot exception set forth in RCW 51.08.013 because the parking area *should* have been used for another purpose." CABR at 43. The IAJ concluded that, at the time of her fall, Dillon was not acting in the course of employment under RCW 51.08.013. The IAJ issued a proposed decision and order affirming the Department's order. Dillon petitioned for review to the Board, which denied her petition and adopted the IAJ's proposed decision and order as its final decision.

Dillon appealed the Board's decision to King County Superior Court. After a bench trial, the trial court adopted the Board's findings of fact and conclusions of law, entered additional findings of fact and conclusions of law, and entered a judgment and order affirming the Board's decision. Dillon appeals.

## DISCUSSION

### Standard of Review

In an industrial insurance case, we review the decision of the trial court, not the decision of the Board. See, Rogers v. Dep't of Labor & Indus., 151 Wn. App.174, 179-81, 210 P.3d 355 (2009); RCW 51.52.140. "[O]ur review in workers' compensation cases is akin to our review of any other superior court trial judgment." Id. at 181. Thus, we limit our review to determining whether substantial evidence supports the findings made by the trial court and then

4

review de novo whether the trial court's conclusions of law flow from the findings. Id.; see also, Gorre v. City of Tacoma, 180 Wn. App. 729, 324 P.3d 716 (2014), amended on reconsideration in part, as amended. Unchallenged findings are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Because the Board's consideration of the statutory term "parking area" is a matter of statutory interpretation, we review its decision on this issue de novo. Univ. of Washington, Harborview Med. Ctr. v. Marengo, 122 Wn. App. 798, 802, 95 P.3d 787 (2004). Our fundamental objective in interpreting a statute is to ascertain and carry out the Legislature's intent. Id.

### Coverage under the Act

The Act provides coverage for a worker who is injured while "'[a]cting in the course of employment.'" RCW 51.08.013(1) defines "acting in the course of employment" as follows:

> 'Acting in the course of employment' means the worker acting at his or her employer's direction or in the furtherance of his or her employer's business which shall include time spent going to and from work on the jobsite as defined in RCW 51.32.015 and 51.36.040, insofar as such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer, except parking area.

Under this provision and what has come to be known as the "coming and going" rule, a worker is acting in the course of employment and covered under the Act for injuries sustained while coming and going from work on the jobsite in areas controlled by his or her employer. Marengo, 122 Wn. App. at 801. However, "specifically excepted from coverage are injuries occurring in 'parking areas' while going to or from work." Madera v. J.R. Simplot, Co., 104 Wn. App. 93, 96,

15 P.3d 649 (2001); accord, Ottesen v. Food Servs. of Am., Inc., 131 Wn. App. 310, 315, 126 P.3d 832 (2006); see also, Bolden v. Dep't of Transp., 95 Wn. App. 218, 221, 974 P.2d 909 (1999); Bergsma v. Dep't of Labor & Indus., 33 Wn. App. 609, 615, 656 P.2d 1109 (1983).

Dillon claims that she is entitled to compensation under the Act because, in her view, she was injured while going home from work in an area controlled by her employer. She recognizes the parking area exception to coverage under the Act, but argues that the area where she fell was not a "parking area" within the meaning of the Act. We disagree.

As the legislature did not define the term "parking area," we look to the ordinary meaning of the term in construing the Act. In Boeing Co. v. Rooney, 102 Wn. App. 414, 418, 10 P.3d 423 (2000), we determined that the parking area exclusion applied only to areas where vehicles actually parked, not to a grassy slope that was adjacent to a parking lot, but on which vehicles were never parked. Similarly, in Madera, we looked to dictionary definitions of "parking," which included "the leaving of a vehicle in an accessible location" and "an area in which vehicles may be left." Marengo, 122 Wn. App. at 803 (citations omitted). Based on these definitions, we concluded that a drive-through lane where an employee had been injured when she slipped and fell on a patch of ice was not a "parking area" under RCW 51.08.013(1). Madera, 104 Wn. App. at 95. In Marengo, 122 Wn. App. at 803, we held that a stairwell in a parking garage was a means of getting to and leaving from a parking area and not a place where vehicles park. Consequently, it was not a "parking area" under RCW 51.08.013(1).

6

In each of these cases, we determined whether a given area was a "parking area" based on whether the area was actually used for parking. The Board has taken a similar approach to interpreting RCW 51.08.013(1). For example, in In re Burnett, 1978 WL 182672 at *1-2 (1978), an employer had set aside a section of its property to be used as a parking area by its employees. The area was fenced and paved and parking stalls had been painted. The area, however, was not actually used for parking vehicles. Instead, the employer used much of the area for storage. When an employee filed a claim for injuries sustained in the area, the Board determined that the parking area exception did not apply, noting that the area was no longer used for parking at the time of the injury. The Board emphasized that it was the actual use of the area that controlled, explaining:

> There is nothing magic about a fence that would forever stamp the whole area inside of it as a 'parking area' if, in fact, *much of such area was being used for something else.* The particular location where the claimant fell was a storage area on the employer's premises; *it clearly was not used for parked cars.*

Burnett, 1978 WL 182672 at *2 (emphases added).

Notwithstanding Thorpe's testimony, the undisputed evidence in this case was that the area in which Dillon fell had been used as a parking area for over fifty years. By Dillon's own testimony, at the time she fell, at least one car was parked in the area between the employee only entrance and the drain. The trial court considered the actual use of the area where Dillon fell and correctly concluded it was a "parking area" within the meaning of RCW 51.08.013. There was no error.

Dillon points out that, although an employee generally is not covered under the Act for injuries sustained in a parking area, where the area is also part of the employee's "jobsite," as defined in the Act, the parking area exception may not apply. Dillon argues that the area where she fell is a jobsite because Bardahl employees occasionally emptied buckets of water used in the business in a nearby drain. The argument is without merit.

"Jobsite" is defined as "the premises as are occupied, used or contracted for by the employer for the business or work process in which the employer is then engaged." See RCW 51.32.015 and 51.36.040. Even assuming that Bardahl employees dumping buckets of water falls within this definition, it is of no help to Dillon. It is not enough that the parking area is a jobsite as to some employees, it must be a jobsite as to the employee claiming benefits under the Act. Olson v. Stern, 65 Wn.2d 871, 877, 400 P.2d 305 (1965) (parking area was jobsite as to on-shift employee performing his work duties but not as to off-shift employee on his way home after work). Here, there was no evidence that the area was a jobsite as to Dillon. It is undisputed that Dillon was never assigned any duties in the area where she fell and that, at the time of her fall, she was not performing work duties, but was on her way home. Thus, under Olson, Dillon's injuries were not sustained in a jobsite and are not exempt from the parking area exception.

Dillon contends that even if she was injured in a parking area that was not part of her jobsite, she is entitled to recover under the Act because she was injured on a "hazardous route" within the meaning of Hamilton v. Dep't of Labor & Indus., 77 Wn.2d 355, 363, 462 P.2d 917 (1969). But her reliance on Hamilton is misplaced. In that case the court adopted the "hazardous route rule," extending

8

the scope of coverage under the Act to areas not owned or controlled by the employer under specified circumstances. The rule is inapplicable here because it is undisputed that the area of Dillon's accident was owned and controlled by her employer. But even if that were not so, the rule would be of no help to her because the Hamilton court expressly noted the legislature's intent "to exclude from coverage injuries occurring to an employee in a parking area maintained either on or off the employer's premises. . . ." Hamilton, 77 Wn.2d at 362. Accordingly, we noted in Bergsma that "[i]f Hamilton had been injured on [her employer's] parking lot while on her way to work, she would have been precluded from recovery." Bergsma, 33 Wn. App. at 614. Because Dillon was injured while walking through the Bardahl parking area on her way home from work the hazardous route rule is inapplicable.

## Attorney Fees

Dillon requests an award of reasonable attorney fees and costs on appeal pursuant to RAP 18.1 and RCW 51.52.130. But because she is not the prevailing party, the statute is inapplicable and we decline her request. Pearson v. State Dep't of Labor & Indus., 164 Wn. App. 426, 445, 262 P.3d 837 (2011), as modified (Nov. 28, 2011).

Affirmed.

WE CONCUR: